Houston Harvey, Respondent, v. Henry A. Gardner, Trustee for the Alton Railroad Company, a Corporation, and Kansas City Terminal Railway Company, a Corporation, Appellants, No. 41026—223 S. W. (2d) 428.

Division Two, September 12, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, October 10, 1949.

*Charles M. Miller* for appellant Gardner, Trustee.

*Samuel W. Sawyer, John H. Lathrop* and *James F. Walsh* for appellant Kansas City Terminal Railway Company.

*Claude L. Schenck, E. E. Thompson* and *Sam Mandell* for respondent; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

BARRETT, C.—Houston Harvey was a fare paying passenger on a Kansas City Public Service Company bus when it was involved in a collision with an Alton Railroad engine on the tracks of the Kansas City Terminal Railway Company. Harvey instituted

736

this action against the Kansas City Public Service Company, the Alton Railroad and the Kansas City Terminal Railway Company to recover damages for his personal injuries. He settled with the Kansas City Public Service Company for $850.00 and upon the trial of his cause against the railroad and the terminal company recovered a judgment of $8,000.00. The collision occurred at the intersection of Osage Avenue and the terminal tracks in Kansas City, Kansas, and the action is therefore governed by the laws of Kansas. Upon this appeal by the railroad and the terminal company it is urged that Harvey failed to establish a submissible case against either appellant, that the court erred in giving the seven instructions on behalf of the plaintiff and in refusing fourteen instructions offered by the railroad and that the verdict is excessive.

Harvey was seated on the third or fourth seat back from the bus driver on the south side. It was 6:15 A. M. "daylight savings time" September 28, 1945 and it was dark, and there was a drizzling rain. There are three sets of tracks at the crossing and the inexperienced bus driver did not stop the bus before starting across the tracks. He had stopped about eighty feet east of the crossing while some of his passengers alighted and then proceeded on at a speed of about seven miles an hour and the bus was struck by an engine on the second set of tracks.

 The bus driver and passengers on the bus, who were looking to the south, testified that the first time they saw the engine it was but twenty feet from the bus. They testified that there was no headlight on the engine. The train crew claimed that the headlight was turned off after the collision. In this situation the railroad's negligence in operating the engine without a headlight was for the jury's determination. Calvin v. Schaff, 118 Kans. 196, 200-202, 234 P. 1006.

 As to warning signals the plaintiff's evidence was negative but passengers on the bus testified that they heard no signals. The bus driver did hear a bell ringing when he first saw the engine twenty feet away. The train crew claimed that the bell was ringing and that signals were given. But again, in this situation, whether the railroad was negligent in failing to give timely and proper signals was for the jury's determination. Missouri Pacific Ry. Co. v. Johnson, 44 Kans. 660, 665, 24 P. 1116; Missouri Pac. Ry. Co. v. Moffatt, 56 Kans. 667, 671, 44 P. 607.

 The engineer admitted that the speed of the engine was ten miles an hour. Other witnesses said that its speed was fifteen miles an hour or more. There is an ordinance limiting the speed of locomotives at crossings in Kansas City, Kansas, to six miles an hour. The railroad says that the ordinance is unreasonable and void because it limits the speed of trains to six miles an hour in a city of 140,000 population irrespective of whether the train is moving over a crossing or a fenced right of way. In the first place, that is not this case.

The collision was at a much traveled street intersection. In the second place, the ordinance has been before the Supreme Court of Kansas and that court has held that it was passed for the purpose of regulating the railroad's relations to the public. Long v. Missouri Pac. R. Co., 114 Kans. 40, 44-45, 216 P. 1079. In another case it was held that the city had the power to enact the ordinance and that a violation of the ordinance was negligence per se. C., R. I. & P. R. Co. v. Kennedy, 2 Kans. A. 693, 43 P. 802. Admittedly the engine was traveling at a speed in excess of that permitted by the ordinance and whether the speed was negligent in all the circumstances was for the jury. There was evidence to support that assignment and it was not error to refuse the railroad's instruction twenty-one declaring the ordinance void. Long v. Missouri Pac. R. Co., supra; C., R. I. & P. R. Co. v. Kennedy, supra.

█ Instruction three submitted, as to the railroad, failure to have a headlight burning and failure to keep a careful lookout ahead and laterally for approaching traffic on Osage Avenue. It also submitted whether the engineer could have seen the bus in time to have stopped or warned by signal after it became apparent that the bus intended to proceed on to the crossing. The railroad not only contends that there is no evidence to support these specifications but also, as submitted, that it proceeds on the theory of humanitarian negligence as applied in Missouri. On the other hand, the terminal company contends that the submission injects primary negligence into the last chance doctrine of Kansas. In the first place, the instruction submitting these matters is neither a humanitarian nor a last chance instruction or submission and the appellants do not point out how it is. In any event instruction three is a submission of several acts of primary negligence. It was doubtless based upon the following testimony of the railroad's engineer:

"Q. Well, you never saw the bus until it was within 20 feet of your track, did you? A. No, sir.

Q. And the only reason you didn't see the bus when it was all lit up was because you didn't look over there, wasn't it? A. I was looking right ahead.

Q. And I said the only reason you didn't see it—

A. (Interrupting) I am looking right down the track, there are little red lights you know, I have to look down there, and I don't have to be gawking down the street."

* * * *

"Q. . . . I said the only reason you didn't see him was because you didn't look to your right?

A. Well, I may have looked a little. I looked ahead to see where I was going.

Q. I said you didn't look farther than 20 feet?

A. No, sir.

Q. Nothing in the world to stop you from seeing it at 150 feet? A. No, sir.''

\* \* \* \*

''Q. Now, then, when you saw this bus coming 20 or 25 miles an hour, all lit up, 20 or 25 feet back of your track, if you had applied your brakes then you would have stopped before this collision occurred?

A. I didn't apply the brakes.

Q. I said if you had you would have stopped before the collision?

A. I had the right of way, it wasn't my business to stop.

Q. So you are saying you had the right of way and that is why you didn't stop? A. That's right.

Q. But if you had tried to find a way you could have stopped?
A. I could stop any time I wanted to.

Q. Sure, you can keep on' bulling on any time you want to, too.

A. I wasn't bulling on, just running 10 miles an hour, a safe speed.

Q. We won't dispute it—if you were back here 15 feet and put the brakes on, you would have stopped before the collision occurred? A. I could have stopped, yes.

Q. But you didn't do it? A. Correct.

Q. And you waited there until this bus was within three or four feet of the track?

A. I waited until I could see if he was going to stop or not.

Q. You waited until he got up within three or four feet of the track toward you? A. That is right.

Q. And you didn't do a blessed thing about stopping until you got up there within three or four feet?

A. Until I saw he was not going to stop.

Q. You didn't do one thing under the sun until he was within three or four feet of the track, did you?

A. That's right.''

So there was evidence to support these primary specifications of negligence and it was not error to give instruction three. A., T. & S. F. Ry. Co. v. Baker, 79 Kans. 183, 98 P. 804; Missouri Pac. Ry. Co. v. Johnson, 44 Kans., 1. c. 664, 24 P. 1116; Gilbert v. Missouri Pac. R. Co., 92 Kans. 697, 142 P. 270. Since there was evidence from which the jury could find that the railroad was negligent in each of these seven particulars it was not error to refuse its withdrawal instructions 8, 9, 10, 11, 12, 13 and 14.

As to the Terminal Railroad, the negligence specified and submitted was failure to have a flagman at the crossing. The ter-

minal company admitted that it had maintained a flagman at the crossing from 5:45 A. M. to 8 A. M. for over twenty-five years. Its excuse for the flagman's absence at the time of this collision was that the regular flagman had been injured or was ill. The terminal company, relying on certain Missouri cases (Hamilton v. City Light & Tr. Co., 222 Mo. A. 172, 3 S. W. (2) 736), contends that its failure to have a flagman on duty was not actionable negligence. The submission and the evidence in support of it was hypothesized upon a finding that this was a heavily traveled crossing with commercial buildings in close proximity which obstructed the view, that there was an unusual amount of noise in the vicinity of the crossing and that ordinary signals were difficult to hear and that by reason of all these factors the crossing was hazardous and the terminal company had assumed the duty of maintaining a flagman to warn approaching traffic. In these circumstances the Terminal's negligence with respect to the flagman was for the jury and it was not error to give the plaintiff's instruction No. 4 on this subject. The evidence and the instruction covered every prerequisite to liability for failure to have a flagman on duty at the time of the collision in question. Johnson v. Union Pac. R. Co., 157 Kans. 633, 143 P. (2) 630; annotations 16 A. L. R. 1273, 1277; 71 A. L. R. 1160, 1175.

 Nevertheless, the railroad and the terminal company contend that under the law of Kansas their negligence was not the proximate cause of the collision and the plaintiff's injuries and, therefore, the court erred in submitting their liability and in giving instructions 1, 2, 5, 6 and 7 and in refusing the railroad's instructions 15, 16, 17, 19, 20 and 22. The basis of their argument is that the proximate cause of the collision was the negligence of the bus operator in failing to stop before proceeding over the crossing. The railroad says "The most outstanding negligence pleaded by plaintiff and conclusively disclosed by the evidence is the failure of the operator of the bus to bring the bus to a complete stop before attempting to cross over the railroad tracks on the crossing as required by the statutory law of Kansas, and the instructions of his employer . . . " It is in this connection that the appellants contend that the plaintiff is conclusively bound by the allegations of his petition with respect to the negligence of the bus driver. Weil v. Posten, 77 Mo. 284; Bruce v. Pullis, 34 Mo. 246; Otrich v. St. L., I. M. & S. Ry. Co., 154 Mo. A. 420, 134 S. W. 665. The railroad's counsel raised the somewhat similar question in Hardwick v. Kansas City Gas Company, 355 Mo. 100, 195 S. W. (2) 504 and we pointed out in that case that counsel had failed to distinguish between the use of pleadings containing admissions against interest as evidence and their office and use as pleadings. Annotations 14 A. L. R. 22, 23; 90 A. L. R. 1393. It was also pointed out in that case, as a general rule, that multiple pleas may not be used as admissions upon another issue in the same

case because they do not possess the characteristics inherent in admissions against interest. 4 Wigmore, Evidence, Sec. 1048, pp. 2-6. The pleading was admitted in this case, and we assume properly so, but it did not demonstrate that the appellants' negligence was not a proximate concurring cause or so conclude the plaintiff that he may not also recover for the defendants' negligence. ''When put in evidence, as it was, its contents became admissions of fact to be considered by the jury along with respondent's testimony and the circumstances attending the accident, but nothing more.'' Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 142, 31 S. W. (2) 21, 24.

There can be no doubt of the bus driver's negligence and undoubtedly his negligence contributed to cause the collision and plaintiff's injuries but it does not necessarily follow that the appellants are thereby relieved of responsibility for their negligence. There have been many instances in which the railroad's negligence was not the proximate cause of the accident and injuries complained of within the meaning of the law of Kansas. Richards v. C., R. I. & P. Ry. Co., 157 Kans. 378, 139 P. (2) 427; Whitcomb v. A. T. & S. F. Ry. Co., 128 Kans. 749, 280 P. 900; Bunton v. A. T. & S. F. Ry. Co., 100 Kans. 165, 163 P. 801. Missouri Pac. Ry. Co. v. Columbia, 65 Kans. 390, 69 P. 338 is an excellent example of a remote cause relieving the railroad of liability and Lambel v. City of Florence, 115 Kans. 111, 222 P. 64, is an example of a █ condition and not an act of concurrent negligence. One essential difficulty with the appellants' argument is that it ignores the fact that Kansas has always recognized liability for joint and concurrent negligence. Jones v. Kansas City Pub. Ser. Co., 158 Kans. 367, 147 P. (2) 723. ''A particular cause may not be said to be concurrent unless without it the injury would not have occurred. It is a concurrent cause if it was a cause which was operative at the moment of injury and acted contemporaneously with another cause to produce the injury and was an efficient cause in the sense that without it the injury would not have occurred.'' Rowell v. City of Wichita, 162 Kans. 294, 303, 176 P. (2) 590, 596. In the circumstances detailed whether the appellants' negligence concurred and contributed to proximately cause the collision and injury complained of was for the jury. Taggart v. Yellow Cab Co., 156 Kans. 88, 131 P. (2) 924.

Also in Kansas there are several instances of guests in automobiles being guilty of contributory negligence as a matter of law. Buchhein v. A., T. & S. F. Ry. Co., 147 Kans. 192, 75 P. (2) 280; Christie v. A., T. & S. F. Ry. Co., 154 Kans. 713, 121 P. (2) 208. However, it does not always follow that the host's negligence is imputable to his guest. Calvin v. Schaff, 118 Kans. 196, 199, 234 P. 1006. There is a further essential difficulty, however, with the appellants' contention in this respect. Harvey was a fare paying passenger upon a public conveyance and the Supreme Court of Kansas

has never held that the negligence of a public carrier is imputable to one of its passengers. Becke v. Missouri Pac. R. Co., 102 Mo. 544, 13 S. W. 1053; Little v. Hackett, 116 U. S. 366, 6 S. Ct. 391, 29 L. Ed. 652. Again, in the circumstances, the appellants' concurrent negligence was for the jury's determination. Corley v. A., T. & S. F. Ry. Co., 90 Kans. 70, 133 P. 555.

Instruction 1 with reference to concurrent negligence and joint liability was taken from Timmons v. St. L.-S. F. Ry. Co., 231 Mo. A. 421, 429, 100 S. W. (2) 952, 958. The subject of proximate cause was sufficiently covered in instructions 5 and 7 (Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S. W. (2) 606) and neither are these two instructions or instructions 2, 3, 4 and 6 so confusing or misleading or conflicting as to constitute prejudicial error. Mo. R. S. A., Secs. 847.123, 847.140(b). The railroad's instructions 15, 16, 17, 19, 20 and 22 "relate somewhat to the same issue" and for that reason alone were properly refused. In any event, as we have indicated, the subject of proximate cause and the railroad's liability were sufficiently and properly covered by other instructions. If there was any error in any of the given instructions or any error in refusing instructions it was not so prejudicial to the appellants' cause as to require a new trial.

The plaintiff was fifty-seven at the time of his injury and had been employed by the Wilson Packing Company as a paunch trimmer for years. He was at home in bed for two weeks and off work for another two weeks. For about a month after he returned to his employment he was given lighter work. Since then he has resumed his regular job and earns seventy-five cents an hour. When the engine hit the bus the plaintiff was thrown from his seat to the floor. He has a doctor bill of $150.00. His doctor described his injuries as a large bruised area over the right kidney "and he had other bruises, more or less, over his entire body, but they, more or less, were superficial, but the one over the right kidney was large and indicated a very deep and severe bruise." The doctor found some blood in his urine. His back was taped when he received emergency treatment and the doctor again re-taped it after the third or fourth visit. He was given diathermy treatments for "a deep, severe sprain and bruise, muscular injuries." The doctor saw him at his office twenty-eight times. He has no objective symptoms and the doctor gave as his opinion that he had a "lumbar sacro sprain," which the doctor thought was permanent. Another doctor who examined the plaintiff was of the opinion that he had an injured muscle "and that, along with the condition down the thigh, I believe there is a thinning out of the disc that goes between the second and third lumbar vertebrae."

He complains of pain in his back and of headaches and says that he does not feel as well as he did before the accident and that he cannot work as well as he did formerly. But, considering the

742

present value of money, it is our view that the verdict of $8,000.00 is nevertheless excessive by $3,000.00. The plaintiff's injuries are fairly comparable to the injuries in Harding v. Kansas City Public Ser. Co., (Mo. A.) 188 S. W. (2°) 60. Therefore, if the plaintiff enters a remittitur in the sum of $3,000.00, within fifteen days, the judgment is affirmed in the sum of $5,000.00 as of the date of the original verdict, otherwise the judgment will be reversed and the cause remanded for a new trial. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.