Ronald GASS, a Minor, by John Gass, His Next Friend, (Plaintiff) Respondent,

v.

Rosemary J. KNITTIG, Gilbert J. Moser, Kathleen D. Corey and Delbert N. Turnbough, Defendants,

Kathleen D. Corey, (Defendant) Appellant.

No. 31970.

St. Louis Court of Appeals. Missouri.

Sept. 21, 1965.

Rehearing Denied Oct. 20, 1965.
Application to Transfer Denied Dec. 13, 1965.

---

Richard C. Wuestling, III, William F. James, James & Morris, St. Louis, for defendant-appellant.

John D. Hasler, St. Louis, for defendant Rosemary J. Knittig.

Dearing, Richeson, Weier & Roberts, Hillsboro, for defendant Gilbert J. Moser.

Stewart & Bruntrager, Joseph G. Stewart, St. Louis, for respondent.

L. F. COTTEY, Special Judge.

A chain-reaction collision involving four automobiles driven by the defendants, and a fifth in which plaintiff was riding as a passenger, has resulted in a judgment for plaintiff from which only defendant No. 3 appeals. Accepting as true the evidence most favorable to plaintiff, the facts are these:

Lemay Ferry Road, near its junction with Butler Hill Road in St. Louis County accommodates four lanes of traffic, two northbound, two southbound. Plaintiff was southbound in the outer or curb lane on his side at a speed of "about 40 miles an hour." All four defendants were northbound, the first three in the inside lane and the fourth in the curb lane on their side. As defendant No. 1 approached the Butler Hill junction where she proposed to make a left turn, she slowed her automobile, gave the appropriate signals, and, observing plaintiff's car approaching at a distance of about 100 feet, came to a stop to allow it to clear the intersection. Almost instantly thereafter her automobile was struck from the rear by the automobile of defendant No. 2—a "slight tap * * * barely felt"— and within "a matter of seconds" No. 2, in turn, was similarly struck from the rear by the automobile of defendant No. 3, who had been following at a speed of "30 or 35" miles per hour. That collision was severe, but all three vehicles remained in line in the traffic lane. At about the moment when those cars had "just hit," defendant No. 4 turned into their lane from the curb lane, some "50 or 75 feet" behind No. 3, in the course of passing a truck he had been following. He had not previously noticed the automobiles of the other three defendants. He was driving "about 40 miles an hour." Unable to stop, and prevented by the truck alongside him from re-entering the curb lane, he undertook to avoid the imbroglio ahead of him by swerving to his left across the highway. That concededly negligent maneuver brought him into head-on collision with the automobile in which plaintiff was riding, the point of impact being "about 20 feet" south of the intersection.

The trial court discharged defendant No. 1 on a directed verdict. The jury exonerated defendant No. 2. The verdict against defendants No. 3 and No. 4 was predicated

on the proposition that their concurring negligence caused the accident. No. 3's contribution to the affair, as hypothesized in plaintiff's main instruction, was that she "overtook * * * and negligently and carelessly allowed her said automobile to run into and collide with the rear end of" the automobile ahead of her, thereby causing No. 4 to take evasive action to avoid running into her—and the action he took compounded the offense. It is apparent from the language of the instruction, and from the authorities cited to sustain it, that as against defendant No. 3 the case was submitted under the rear end collision doctrine. She complains that no submissible case was made against her on that theory. We agree, but not for the reasons she assigns.

█ Beyond doubt defendant No. 3 was negligent in running into the rear end of No. 2's automobile which was at rest in proper position ahead of her in the traffic lane. And to avoid entanglement in the metaphysical subtleties of the rear end collision doctrine, we will assume that the instruction submitting that issue correctly resolved the question as to whether her negligence was general or specific and hypothesized every circumstance consistent with the view adopted. The fact that No. 3's collision with No. 2 was a sequel to the "sudden stop" made by No. 2 in colliding with No. 1 does not absolve her of negligence *as a matter of law*, as she insists it should. Two wrongs do not so positively make a right. That circumstance would no doubt have authorized an instruction on No. 2's contributory negligence, had No. 2 been the plaintiff in the case; but No. 2 is not complaining. The occupant of a third vehicle is the plaintiff in this case, and if No. 3 violated her duty toward him we may not exonerate her simply because another was in pari delicto with her.

█ But the fact that defendant No. 3 committed a negligent act does not end the inquiry. The next and ultimate question is, was that act of such a character as to give rise to the cause of action asserted against her in this case? On this phase of the inquiry the rule is that even though the act complained of involves a lack of care, it will not amount to actionable negligence unless it is shown to have been both a violation of some duty owed to plaintiff and an efficient cause of his injury. Kelley v. National Lead Co., 240 Mo.App. 47, 210 S.W.2d 728, 734; Bauer v. Wood, 236 Mo. App. 266, 154 S.W.2d 356, 358; 65 C.J.S. Negligence § 1 c, pp. 318–319. The requirement is not relaxed where the acts of several defendants are cited as concurring causes of the accident. In those cases the test is applied to the act of each, and each must be established as one of the responsible causes of the accident. Harvey v. Gardner, 359 Mo. 730, 223 S.W.2d 428, 433; Reed v. Shelly, Mo.App., 378 S.W.2d 291, 301; 65 C.J.S. Negligence § 110 b, p. 680 et seq. Thus the rule excludes from consideration as an irrelevant coincidence the act of any defendant which, although negligent as to others, was not harmful to plaintiff. Allen v. Wilkerson, Mo.App., 87 S.W.2d 1056, 1060. We think it demonstrable in this case that defendant No. 3 did not violate any duty she owed to plaintiff and that her collision with No. 2 was in nowise causally connected with the ensuing accident between plaintiff and No. 4.

In reaching that conclusion we have necessarily considered what the situation would have been had No. 3 displayed the most exemplary caution at all stages of the affair, the other circumstances being what they were. Significant among those circumstances is the fact that defendants No. 1 and No. 2 had stopped their automobiles to allow plaintiff's car to clear the intersection. It was both necessary and lawful for No. 3 to stop behind them. The *fact* of her stopping, therefore, was an observance of her duty under the circumstances, not a violation of it; indeed, it is only the *manner* of her stopping that is complained of. Let us examine that. At the moment

when it became necessary for her to stop, defendant No. 4 had just turned into, or was in the process of turning into, the lane behind her at a distance of only "50 or 75 feet." He had not previously observed, nor taken any precaution to accommodate himself to the traffic situation ahead of him; he was traveling "about 40 miles an hour." At that moment, by that irresponsible behavior, he created an emergency fraught with peril to everyone on the highway in front of him. If he was to avoid running down No. 3, or evade an equally culpable alternative in that emergency, it is obvious that he needed every inch of available space, every instant of available time, in which to bring his car under proper control. Observe, that No. 3 could have discharged her full duty under the law by simply slowing her automobile and bringing it to a seasonable stop some four or five feet to the rear of No. 2's car. Had she done so, she would have been blameless by every standard. But had she done so, she would have reduced to some extent both the time and space in which No. 4 could hope to redeem his error, and, ironically, to the same extent she would have increased the likelihood of his failure. Instead, by ramming No. 2's automobile she afforded No. 4 the ultimate limit of space, and by failing to slacken her speed she allowed him the maximum interval of time, in which to avoid the consequences of his misconduct. In neither particular did she aggravate plaintiff's peril, in both she ameliorated it; in neither did she contribute to cause plaintiff's accident, in both she did her utmost to prevent it. Her conduct under the circumstances, however involuntary and innocent of charity it may have been, was "above and beyond the call of duty." The accident happened in spite of what she did, not because of it. True, she displayed a prodigal indifference to the rights of defendant No. 2; but plaintiff may not recover on No. 2's cause of action. He must rely solely on a breach of No. 3's duty to him. That she discharged as with "the last full measure of devotion."

Not only was no case made against her on the theory submitted, none can be made against her on any theory. The judgment is accordingly reversed.

WOLFE, P. J., and ANDERSON, J., concur.